## BRADBURY v. FILLINGAME.

No. 5432.   Decided September 12, 1934.   (35 P. [2d] 772.)

*J. J. Whitaker, of Salt Lake City,* for appellant.

*H. L. Mulliner and L. L. Robinson,* both of Salt Lake City, for respondent.

MOFFAT, Justice.

This is an action at law, as designated by appellant, "an action in 'special assumpsit.' " The cause was tried to the court sitting without a jury. Upon the conclusion of the hearing, the court made and entered findings of fact and conclusions of law, and in pursuance thereof entered judgment in favor of the defendant and ordered the action dismissed. The plaintiff appeals.

The complaint contains two causes of action; one for the recovery on the part of plaintiff upon a claim alleged to be due for services rendered and the other upon an assigned claim, the consideration for which was the relinquishment of an alleged equity under a contract of purchase and sale of real property.

It appears that Fillingame, the defendant herein, had entered into a contract to sell to one Corless an apartment house known as the Broadmoor Apartments; that Corless was in default in payments. It also appears that there was a suit pending in the district court wherein the Utonah Apartments Company was plaintiff and Fillingame was the defendant. The subject-matter of that suit is not disclosed. Bradbury alleges the services rendered by him for Fillingame were for compromise of the suit by the Utonah Apartments Company against Fillingame. This is denied, and the

[1]*Knight* v. *Wessler*, 67 Utah 354, 248 P. 132.

trial court found in accordance with the denial. As to that matter we think the finding of the trial court may not be disturbed.

It further appears that the plaintiff was instrumental in bringing about the execution of certain agreements relating to certain property and adjustments; that contracts relating to which are disclosed by the record. Plaintiff alleges in his complaint, and the court finds, that the defendant, A. Fillingame, and John S. Corless and his wife entered into an agreement whereby each released and relinquished all their respective rights and obligations under a contract relating to the BroadmoorApartments in which Fillingame was the seller and Corless the buyer. In consideration of Corless releasing and canceling his claim under that contract, Fillingame agreed "that whereas the Utonah Apartments Company have agreed to pay as part consideration on the contract of purchase of the said premises (Broadmoor Aparments), the sum of $2,990.00, which sum may be paid by an agreement to bid in a portion of the stock of said Utonah Apartments Company, that in either event one-half of said payment when made, either in cash or in stock, shall be by first party paid over and delivered to second parties herein."

"A. Fillingame, first party, John S. Corless, Rose Corless, second parties," and the document is dated the 20th day of July, 1931.

The plaintiff also pleads, and there was received in evidence, an agreement of assignment bearing the same date. This assignment recites that:

"In consideration of the surrender up by John S. Corless of the apartments known as the Broadmoor Apartments, described in that certain contract dated the 20th day of July, 1931, between A. Fillingame and the Utonah Apartments Company, and in consideration of services rendered by H. C. Bradbury, the undersigned A. Fillingame, being the Seller in the said contract hereinbefore referred to covering the Broadmoor Apartments, hereby assigns, sells, transfers, and sets over to the said John S. Corless and the said H. C. Bradbury herein, in equal undivided portions to each, all the benefits under said contract

conferred by the paragraph commencing on page 3 near the center of said page, and relating to a payment of $2,991.45, and reciting that a stock assessment will be levied to make the said payment. And the said assignor hereby constitutes the said two assignees his attorneys with full power to enforce and collect the said payment, and protect the same by the purchase of stock on assessment sale as in the said agreement provided, as fully and to the same effect as this assignor might or could do under the said contract if this assignment had not been made; the intention of the assignor being that the said two assignees shall have the benefit of that single provision of the said contract relating to said payment of $2,991.45."

The contract between A. Fillingame as the seller and Utonah Apartments Company bears date the 20th day of July, 1931, the same date as all the other agreements. That part of the contract, the benefits of which were assigned to Bradbury and Corless under the provisions of the assignment in the next preceding paragraph herein set forth, provides:

"The balance of said $6,105.00, to wit: $2,991.45, the Buyer (Utanah Apartments Company, agrees to pay as follows: That if funds are available the said Buyer will pay the same in cash within thirty days from and after the date hereof. If funds are not available and Buyer does not have the funds on hand to pay the same within said period, it agrees to levy an assessment upon its outstanding stock of ten per cent in order to meet the said obligation, and if said assessment is paid, to apply the proceeds of said assessment thereupon, and if the proceeds from said assessment are insufficient, to levy within the time allowed by the statutes and laws of the State of Utah therefor, such additional assessments as are necessary to make funds available to meet the said payment.

"It is also understood and agreed that upon any sale of the stock of the Buyer for failure to pay the assessment levied as aforesaid, that the Seller (A. Fillingame) will bid or cause to be bid the said amount of $2,991.45 for the total stock offered on assessment sale provided that the amount so offered is not less than 1,200 shares. If a less number than 1,200 shares are offered, Seller will bid a proportionate amount of the $2,991.45 for a less number, and any amount so bid for said stock shall be applied in satisfaction of the said payment of $2,991.45."

No error is assigned as to any evidence received or excluded by the court. The assigned errors relate solely to

the findings of the court and the conclusions drawn therefrom. There being sufficient competent evidence in the record to support the findings, this court may not disturb them on this appeal.

The record discloses that the Utonah Apartments Company did not within the thirty-day period pay or make available cash to pay the $2,991.45 referred to in the contracts. That company thereupon became liable under its contract with Fillingame, part of which had been assigned to plaintiff, Bradbury, and to Corless, to levy an assessment upon its stock and offer same for sale. This was done. The stock was sold and certificates issued in the name of John S. Corless in the amount of 718 shares and in the name of H. D. Bradbury in the amount of 717 shares. Corless refused to receive the tendered stock.

Appellant, on his own behalf and on behalf of Corless, who had assigned to plaintiff, contends that the stock received by him in payment for his services and the stock tendered to Corless for his equity in the apartments was not in fact stock of the Utonah Apartments Company because of lack of power of the company, to levy an assessment or sell stock for such assessment; otherwise stated, the stock was valueless.

This contention goes to the problem, not of what Fillingame agreed to do, but to the question of what the Utonah Apartments Company agreed to do. It appears from the evidence, and the court found, that what the defendant, Fillingame, had agreed to do in payment of the services of plaintiff and the equity of Corless in the apartments was to assign to the plaintiff and Corless the benefits to be derived from that part of the contract of sale of the Broadmoor Apartments to Utonah Apartments Company relating to the payment of the sum of $2,991.45, in the manner and medium provided in that contract, whether such benefits matured in a cash payment or in stock, which thing the defendant had done. What plaintiff and Corless had agreed

to accept and what had been given to them was the assignment of certain benefits to accrue under the contract referred to.

The contract provided that, if funds were available within thirty days, such would be paid; if not, then the alternative provision should be operative. No fraud, misrepresentation, concealment, or matter tending to vitiate the contract is claimed. If the Utonah Apartments Company has failed to issue its stock or put up for sale and sell and deliver its stock with the ordinary elements of validity, such question would seem to be a question to be determined between the plaintiff and Corless on the one hand and the Utonah Apartments Company on the other. That company is not a party to this action, and the trial court properly refused to go into that matter. The assignees have the same power to test all matters pertaining to the benefits of that part of the contract assigned to them as the defendant herein has or may have.

No complaint is made about that part of the assigned contract containing the alternative provisions because they are alternative. Under the facts shown and the express terms of the contract, no breach occurred because of failure to pay cash within the thirty-day period. Upon the expiration of the thirty-day period, the contract ceased to ■ be an alternative contract because of nonavailability of funds, it may be presumed, or, if such presumption be contrary to the fact, such may be shown in a proceeding upon that contract. However, the lapse of time and the attempted compliance with the alternative provision of the contract would seem to constitute either an election not to comply, or a failure to comply, with the alternative cash provision of the contract.

"When an alternative contract has ceased to be alternative by reason of an election by the party having the option, by impossibility of performing one or more of the alternatives, or otherwise, a breach as to the one remaining alternative may occur in the same way as if the contract had originally provided for only that performance." Restatement of the Law of Contracts, § 325.

As stated, however, the breach of the terms of that contract by the party bound to perform under that provision is not before us.

The trial court, after making findings relating to the making of the contracts and the transaction intended to be covered thereby and certain other and additional issues not affecting the main issue among those findings, included this statement:

"That written contracts evidencing the said agreement were entered into and exchanged between plaintiff and defendant herein and the said John S. Corless, and the said agreement was by the said written contracts fully and mutually consummated, and the said stock thereafter sold at assessment sale, with the knowledge of plaintiff, who participated therein, and 1,429 shares of the said Utonah Apartments Company were bid in at said assessment sale of said Company, and one-half of said stock was delivered to and accepted by plaintiff herein in full performance of the provisions of said agreements with relation to his rights and interests, and one-half of said stock was thereafter tendered to said John S. Corless in full settlement, payment and satisfaction and discharge of his rights and interests in said contract and agreements; all in accordance with said provisions of said agreements as made between the said parties, and consummated in writing as hereinbefore stated."

The contracts and writings referred to are fully set forth in the findings.

While some statements in the findings are rather sweeping and may more properly be classified as conclusions, yet, when stripped of all such, there are ample facts found to support the judgment, and the evidence supports the essential facts found. Being so supported, although reasonable minds might draw different conclusions, the finding of the district court is binding upon us as to that issue. *Knight* v. *Wessler*, 67 Utah 354, 248 P. 132.

There being no error in the record, the judgment of the trial court must be, and the same is, accordingly affirmed, with costs to respondent.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.